## GEORGE KILGORE v. STATE.

No. A-4152.   Opinion Filed Oct. 17, 1923.
(219 Pac. 160.)

(Syllabus.)

1.   **Evidence—False Pretenses—Proof of Nonexistence of Funds or Credit with Bank Essential to Conviction for Giving "False and Bogus Check"—Hearsay Evidence Insufficient.** In a prosecution for giving a "false and bogus" bank check with intent to defraud under chapter 72, Session Laws 1913 (section 2146, Compiled Statutes 1921), it is essential for the state, as part of the corpus delicti of the crime, to prove the "false and bogus" character of the check; that is the nonexistence of funds or credit with the bank by the drawer of the check. Since the Legislature made proof of such negative proposition an essential element of the crime, a conviction is not authorized by proof of such element by hearsay testimony.

2.   **Trial—False Pretenses—Right to Affirmative Instruction Covering Defense.** The defendant is entitled to an affirmative instruction covering the defense interposed where such defense relates to a material element of the crime, and there is evidence to support it. For instructions given over defendant's objection held to be too limited in scope to afford such affirmative submission see body of opinion.

Appeal from Superior Court, Okmulgee County; H. R. Christopher, Judge.

George Kilgore was convicted of passing a bogus check, and he appeals. Reversed and remanded.

L. A. Wallace, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J.   This is an appeal from the superior court of Okmulgee county from a judgment and sentence rendered on the 8th day of July, 1921, based upon the verdict of a jury finding the defendant guilty of the crime of obtaining money by means of a certain false and bogus check, and assessing his punishment at three years and six

months in the state penitentiary. The information charges, in substance, that on November 29, 1920, the defendant made, executed, and delivered to the prosecuting witness, Jim Nance, a certain check in writing (setting out said check), representing that the said check would be honored and paid by the said First National Bank of Beggs, Okla., when the defendant well knew that at the time he made, executed, and delivered said check it would not be honored, but defendant made, executed, and delivered the same to Jim Nance, for which the said Jim Nance paid the said defendant $15, the amount named in said check, for the purpose of cheating and defrauding the said Jim Nance of the value of said $15, and appropriating the same to his own use and benefit.

The evidence on the part of the state proved the execution of such check by the defendant, the delivery of the same to Jim Nance, and the obtaining by the defendant of said Nance the sum of $15, and, further, that on presentation the said check was dishonored by the First National Bank of Beggs, Okla., with the notation thereon "no funds," and there is evidence further to the effect that on the same day another check was given by the defendant to another person in the city of Okmulgee, Okla., on the same bank, in the same amount, and that this check was also dishonored and went to protest when presented, and was returned "no funds."

The defendant admitted the execution and the delivery of the check to the prosecuting witness, Jim Nance, and the obtaining of the $15 thereon. His defense was, however, that he and his brother, Sam Kilgore, were partners in the restaurant business in the town of Beggs, Okla., and that they kept their money on deposit in the First National Bank of Beggs, Okla., in the name of Sam Kilgore, and that prior to

the giving of the check here in controversy arrangement had been made with the First National Bank of Beggs, Okla., to honor checks drawn against said account in the name of this defendant, George Kilgore, and that the said bank had in the past so honored the checks of this defendant against said account, and that the defendant gave the check here in question in good faith, believing that it would be so honored and paid by the bank when presented, and that there was no intent on the part of defendant at the time he gave said check to the prosecuting witness, Jim Nance, and procured $15 thereon, to defraud the said Nance of such money.

The defendant testified that he was a resident of Beggs, Okla., and that on the day in question he had taken the morning train from Beggs, Okla., to Okmulgee, Okla., and that before leaving the town of Beggs he, on that morning, deposited to the account in the name of Sam Kilgore the sum of $100 in the First National Bank at Beggs. Defendant testified also that he took some money with him to the city of Okmulgee, but that he ran out of funds; and procured these additional sums of money for the purpose of having "a good time" while he was at the city of Okmulgee. Defendant also introduced the evidence of Joseph D. Moore, assistant cashier of the First National Bank at Beggs, Okla., who testified that he was acquainted with the defendant, George Kilgore, and that defendant's brother, Sam Kilgore, transacted business with the First National Bank at Beggs, and had an account there in the name of Sam Kilgore, and that the bank had instructions to pay any checks signed by George Kilgore on the Sam Kilgore account if he had the money, and if not to turn them down; that on the 29th day of November, 1920, there was a balance of $9.43 to the credit of the Sam Kilgore account, and that on said date there was a deposit of $100 made, but witness did not know who made

the deposit; that the check to Nance reached the bank December 4, 1920, and on that date the Sam Kilgore account had a balance of $5.43.

Among other instructions given, the trial court gave the following:

"No. 4. You are instructed that under the law of this state any person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing, by means or by use of any trick, or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check, or by any other written or printed or engraved instrument or spurious coin or metal, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding seven years.

"No. 5. You are therefore instructed that, if you believe and find from the evidence in this case, beyond a reasonable doubt, that the defendant, George Kilgore, at and in the county of Okmulgee, state of Oklahoma, on or about the 29th day of November, 1920, did unlawfully, willfully, feloniously, and fraudulently, with intent to cheat and defraud, made, executed, and delivered to one Jim Nance, his certain check, representing to the said Jim Nance that said check would be honored and paid by the First National Bank of Beggs, Okla., the bank on which said check was drawn; and if you further believe and find beyond a reasonable doubt that the said George Kilgore received of the said Jim Nance the sum of $15 good and lawful money of the United States, and of the value of $15, and that the said George Kilgore then and there well knew at the time he delivered said check and obtained the money thereon that said check was false and bogus, and would not be honored by said bank, then, in that event, the defendant is guilty, as charged in the information, and you should so find. On the other hand, after a careful consideration of the whole case, if you entertain a reasonable doubt

as to the defendant's guilt, then the law says you must acquit him.

"No. 6. The court instructs the jury that, if you believe and find from the evidence in this case that the defendant, George Kilgore, at the time of making and delivering said check, had funds or a credit with the First National Bank of Beggs, and that he gave said check in good faith, believing that same would be honored and paid by said bank when presented, then your verdict should be one finding the defendant not guilty.

"No. 7. The court instructs the jury that the legal construction of the term 'credit' is that it must represent money, or some other tangible substance of equal value; and you are further instructed, before you can find from the evidence that the defendant, George Kilgore, at the time he gave the check to the witness, Jim Nance, had credit at the First National Bank of Beggs, you must find that the defendant, George Kilgore, at the time, had property of value in the possession and on deposit at the First National Bank at Beggs out of which the bank could, and would pay said check when delivered to them by the holder thereof."

The errors assigned are as follows:

"First. The court erred in overruling the motion of plaintiff in error for a directed verdict of not guilty.

"Second. The court erred in admitting incompetent, irrelevant, and immaterial evidence on the part of the state and over the objection of plaintiff in error.

"Third. The court erred in refusing and ruling out competent and legal evidence offered by plaintiff in error.

"Fourth. The court erred in giving instruction No. 7 over the objection of plaintiff in error.

"Fifth. The court erred in overruling the motion of plaintiff in error for a new trial."

When the state rested its case in chief the defendant requested the court to direct a verdict of not guilty, which motion is as follows:

"Comes now the defendant and demurs to the evidence offered and introduced by the state, for the reason it is not sufficient to sustain a conviction, and upon the ground there has been no proof that the check was dishonored for want of funds or lack of credit, and the defendant moves the court to request the jury to return a verdict of not guilty.

"The Court: Demurrer overruled.

"Mr. Wallace: Allow the defendant an exception."

The position of counsel for defendant is that the motion should have been sustained because the state wholly failed to prove the false and bogus character of the check as alleged in the information. The burden was upon the state to prove beyond a reasonable doubt that the defendant, at the time of making and delivering the check, gave it with knowledge of the fact that it was "false and bogus," and that it would not be paid when presented. The state did not produce as a witness any officer or employee of the First National Bank of Beggs to prove the status of the account on the date the check was given. The only evidence offered by the prosecution on this point was that the check was deposited for collection with the Citizens' National Bank of Okmulgee, and forwarded by it through the regular channels to the bank on which it was drawn, and was later returned unpaid, with a notation on the check "No account," but no positive proof as to which bank made the notation.

Counsel for plaintiff in error contends that this evidence was not sufficient to make out a case under the provisions of chapter 72, Session Laws of 1913 (section 2146, Compiled Statutes 1921). That part of the act applicable to the case at bar reads as follows:

Section 1. "Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing,

* * * by means or by use of any false or bogus check * * *
shall be deemed guilty of a felony, and, upon conviction, be
punished by imprisonment in the penitentiary for a term
not exceeding seven years.''

The phrase ''by means or by use of any false or bogus.
check,'' is descriptive of the offense, and is an essential ele-
ment of the crime for the state to allege and prove. This
position is supported by the comparatively recent case of
Douglas v. State, 15 Okla. Cr. 648, 179 Pac. 947. The ef-
fect of the decision is that the state must allege and prove
the false and bogus character of the check, and that it was
well known to the defendant at the time he used the same
for a fraudulent purpose. This is in substance the allegation
of the information in the present case. The identical stat-
ute here under consideration was construed in Williams v.
Territory, 13 Ariz. 27, 108 Pac. 243, 27 L. R. A. (N. S.) 1032,
wherein it was held:

''That a check given by a person upon a bank in which
he has no funds, and which he has no reason to suppose will
be honored, is bogus within the statute.''

This case was cited with approval in the Douglas Case,
supra.

There was no testimony on the part of any one connect-
ed with the First National Bank of Beggs that the words
''no account'' were written on said check by any person
connected with that bank who had personal knowledge of
that fact, if it were a fact. The only proof on the part of
the state that such words were written on such check was
by an officer of the forwarding bank, who testified that it
was not the custom of the forwarding bank to make such in-
dorsement, and that it was the rule of the bank on which
the check was drawn to make it. Such proof amounted
merely to hearsay evidence. The statute makes the giving

of a "false and bogus check" with intent to defraud the very essence of the crime, and it is essential in order to prove the "false and bogus" character of the check for the state to prove as a part of the corpus delicti of the crime the nonexistence of funds or credit with the bank by the drawer of the check. Since the Legislature has seen fit to make proof of such negative proposition an essential element of the crime, a conviction is not authorized by proof of such element on hearsay evidence. Realizing the practical difficulties of making such proof the Legislature has since by chapter 33, Session Laws of 1923, p. 47, amended the act by defining the term "false and bogus check," and making refusal of payment of a check by the drawee prima facie evidence of intent to defraud and the knowledge of insufficient funds in or credit with such bank if the drawer shall not have paid drawee thereof the amount thereon with protest fees within five days after the same is presented for payment. Under the amended statute the proof adduced by the state in this case would have made out a prima facie case if the drawer had not paid the drawee the amount of the check within five days after presentment. Thus the Legislature by the amendment has obviated the practical difficulties of directly proving the nonexistence of funds or credit encountered under the statutes here under consideration.

We think, therefore, that the motion for a directed verdict should have been sustained, as the proof of the essential elements of the bogus character of this check on the part of the state was merely hearsay, and the proof by the defendant's witness tends to support the defense interposed that he had credit with the bank and believed the check would be honored by the bank upon presentation to it.

Instruction No. 7, defining the term "credit," we think, is too limited. That word should receive a liberal construc-

tion in favor of the defendant where the statute defines a crime, and should be considered to mean that the Legislative intent was such as is contained in the amended act, chapter 33, supra, where the term is defined not only to mean funds on deposit, but "an arrangement or understanding with the bank or depository for the payment of such check, draft, or order." If the defendant in good faith believed that he had a general arrangement and understanding with the bank to pay checks drawn by him against the account in the name of his brother, Sam Kilgore, and that previous to the giving of such check repeated payments had been made of such checks against such account, the defendant was entitled to an instruction more clearly and broadly defining the term "credit" than the one given by the trial court in instruction No. 7, supra; otherwise the intent to defraud would be presumed if defendant had no money or its equivalent on deposit at the time such check was presented for payment. There was ample evidence in the record to support the contention of defendant's counsel that such an arrangement and understanding was in existence at the time this check was given and presented.

Instructions No. 6 and No. 7 were evidently intended to afford the defendant an affirmative instruction covering the defense interposed, and it has been repeatedly held that the defendant is entitled to have an affirmative submission of his defense if there is evidence tending to support the same. Crittenden v. State, 13 Okla. Cr. 351, 164 Pac. 675, and authorities cited. Instructions No. 6 and No. 7, construed together, do not afford the defendant the benefit of an affirmative instruction applicable to his testimony and that of his witness based upon the hypothesis that it is true. Instructions No. 6 and No. 7, construed together, are too limited in scope, and, considered with the fact that the state failed to

prove by competent evidence the false and bogus character of the check, we think it is apparent that defendant did not have a fair and impartial trial according to the law that existed at the time of the commission of the offense, and for such reasons the cause is reversed and remanded for further proceedings not inconsistent with this opinion.

BESSEY and DOYLE, JJ., concur.